J. Charles Hepworth (ISB #2878)
Hepworth Holzer, LLP
P.O. Box 2582
Boise, ID 83701
208-343-7510 (Telephone)
208-342-2927 (Facsimile)
chepworth@hepworthholzer.com

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| ERICA DAVIS, as Personal Representative of the Estate of ANDREW DALE DAVIS, deceased, and minor children, JC, minor child, SD, minor child; | CASE NO. |
| | COMPLAINT AND DEMAND FOR JURY TRIAL |
| MICHAEL M. MASCHMEYER, as Personal Representative of the Estate of R. WAYNE ESTOPINAL, deceased; and | |
| JAMES JOHNSON and BRADLEY HERMAN, individually and as Independent Co-Administrators of the Estate of SANDRA JOHNSON, deceased, | |
| Plaintiffs, | |
| -vs- | |
| CRANFIELD AEROSPACE SOLUTIONS LIMITED, | |
| Defendant. | |

COME NOW Plaintiffs, and each of them, by and through undersigned counsel, and for their complaint against Defendant, Cranfield Aerospace Solutions Limited, allege as follows:

## I.  JURISDICTION AND VENUE

1.      Original subject matter jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. § 1332(a) as this is a civil action where the matter in controversy exceeds

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different

States and a citizen or subject of a foreign state, to wit:

    a)    Plaintiff decedent, Andrew Dale Davis was a resident of the State of Indiana at the time of his death, and his personal representative, wife, and minor children are residents of the State of Indiana; Plaintiff decedent, R. Wayne Estopinal, was a resident of the State of Indiana at the time of his death, and the personal representative of his estate is a resident of the State of Indiana; and Plaintiff decedent, Sandra Johnson, was a resident of the State of Louisiana at the time of her death, and her co-administrators of her estate are residents of the State of Louisiana; and

    b)    Defendant, Cranfield Aerospace Solutions Limited[1], is a private limited company incorporated and domiciled in the country of England within the United Kingdom of Great Britain and Northern Ireland.

2.    Personal jurisdiction is properly exercised over Defendant, Cranfield Aerospace

Solutions Limited under Idaho Code Section 5-514(a) and the principle of specific personal

jurisdiction, and further complies with the due process requirements of the Constitution of the

State of Idaho and the Constitution of the United States of America, in that:

    (a)    The Defendant, Cranfield Aerospace Solutions Limited, is a foreign company that transacted business within this State of Idaho by the doing of acts for the purpose of realizing pecuniary benefit and/or accomplishing or attempting to accomplish, transact or enhance its business purpose or objective, specifically including Defendant, individually and/or through its officers, agents, and/or employees:

        (i)    engaged in numerous telephone calls, emails, and other correspondence with individuals in the State of Idaho relating to the design, function, and safety aspects of a product being manufactured, sold, and delivered to customers in the State of Idaho;

        (ii)    provided substantial and frequent engineering advice and opinions to individuals in the State of Idaho relating to the design, function, and safety aspects of a product to be or being manufactured, sold, and delivered in the State of Idaho;

---

[1] Cranfield Aerospace Solutions Limited was formerly known as Cranfield Aerospace Limited.  The name change was made by Special Resolution of the company on June 22, 2016.  Any actions or omissions committed under the company's former name are also referred to herein as being acts or mission of defendant, Cranfield Aerospace Solutions Limited.

(iii)   worked jointly with individuals in the State of Idaho to develop materials, procedures, and data to be used in support of Defendant's applications for product design certification and approval by the European Aviation Safety Agency ("EASA") and the United States Federal Aviation Administration ("FAA");

(iv)   assigned rights to a corporation with its principal place in the State of Idaho to use its FAA-approved design under Import Supplemental Type Certificate No. SA03842 to manufacture and sell the product at issue in this action to a consumer in the State of Idaho; and

(v)   Defendant was paid money and realized other pecuniary benefit from its transaction of business in the State of Idaho from which this action arises.

3.      Venue of this action in the United States District Court for the District of Idaho is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or Defendant, Cranfield Aerospace Solutions Limited is subject to the personal jurisdiction of this court with respect to this particular action.

## II.   FACTS COMMON TO ALL CAUSES OF ACTION

4.      On or about September 30, 2005, the United Stated Federal Aviation Administration approved the design of a certain model aircraft known as the Cessna Model 525A airplane under FAA Type Certificate No. A1WI

5.      In or about March 2009, Cessna Aircraft Company, manufactured and sold a certain Cessna Model 525A, airframe serial number 525A0449 ("Subject Airplane"), to EstoAir, LLC, a limited liability company, the design of which conformed to the design approved FAA Type Certificate No. A1WI.

6.      At some time prior to September 9, 2013, Tamarack Aerospace Group, Inc., a corporation with its principal place of business in the State of Idaho, developed a prototype design and held patents relating to an active Tamarack load alleviation system ("ATLAS") product that

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

incorporated Active Winglet technology that was intended for installation and use on airplanes, including certain airplanes manufactured in accordance with FAA Type Certificate No. A1WI.

7.      In order to obtain government approval of a Supplemental Type Certification to allow the installation and use of the ATLAS Active Winglet system on airplanes, Tamarack Aerospace Group, Inc., entered into an agreement with Defendant, Cranfield Aerospace Solutions, Limited, to act on its behalf and provide other services in support of obtaining the desired supplemental type certifications of the ATLAS Active Winglet system, and Defendant, Cranfield Aerospace Solutions Limited, received monetary compensation from Tamarack Aerospace Group, Inc., in exchange for the acts and services provided pursuant to the said agreement.

8.      On or about January 25, 2016, Defendant, Cranfield Aerospace Solutions Limited, applied to the FAA for a Supplemental Type Certificate applicable to certain Cessna 525 series airplane, which was granted, and consequently Import Supplemental Type Certificate No. SA03842 was issued to Defendant, Cranfield Aerospace Solutions Limited, on December 27, 2016.

9.      Following the original issuance of FAA Import Supplemental Type Certificate No. SA03842, Defendant, Cranfield Aerospace Solutions Limited, applied for and was granted amendments to the said Supplemental Type Certificate No. SA03842, the most recent of which was issued on March 26, 2018, and specifically included Cessna Model 525A airplanes.

10.     The type design changes approved under Supplemental Type Certificate No. SA03842 relating to the Cessna Model 525A airplane included:

    i.      Installation of the Tamarack ATLAS Winglets in accordance with Cranfield Aerospace Service Bulletin CA/DD/SB1375 Rev L dated February 2018 or later EASA approved revisions;

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

     ii.     For Continued Airworthiness, refer to Cranfield Aerospace Aircraft Maintenance Manual Supplement CA/DD/M021 Issue J dated December 2017 or later EASA accepted revisions; and

     iii.     Operate the aircraft in accordance with Cranfield Aerospace Flight Manual Supplement CAS/AFM0004 Issue A (R1) dated February 2018 or later EASA approved revisions.

11.     On or about May 28, 2018, Tamarack Aerospace Group, Inc., installed the Tamarack ATLAS Winglets system, which was a load alleviation system also known as the Tamarack Active Winglets system, on the Subject Airplane pursuant to and in accordance FAA Import Supplemental Type Certificate No. SA03842, including all limitations and conditions applicable thereto.

12.     The Tamarack Active Winglets system installed on the Subject Airplane was a design for which Defendant, Cranfield Aerospace Solutions Limited, held the FAA Import Supplemental Type Certificate No. SA03842.

13.     Subsequent to the installation of the Tamarack Active Winglets system on the Subject Airplane on May 28, 2018, through and including November 30, 2018, Defendant, Cranfield Aerospace Solutions Limited, provided Instructions for Continued Airworthiness regarding the Tamarack Active Winglets system, and customer support and engineering services relating to the Subject Airplane and other airplanes modified under FAA Import Supplemental Type Certificate No. SA03842.

14.     On November 30, 2018, the Subject Airplane was being operated pursuant to 14 C.F.R. Part 91 on a flight from Clark County Regional Airport in Sellersburg, Indiana with an intended destination of Chicago Midway International Airport in Chicago, Illinois.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

15.    On November 30, 2018, Plaintiff decedent, Andrew Dale Davis, was the pilot of the Subject Airplane, and Plaintiff decedents, R. Wayne Estopinal and Sandra Johnson, were passengers aboard the Subject Airplane for the aforesaid flight.

16.    On November 30, 2018, and after takeoff for the aforesaid flight, the subject Airplane with the said Tamarack Active Winglets product in place thereon deviated from controlled flight and crashed into trees and the ground in Clark County, Indiana at approximately 10:28 a.m. EST, killing Plaintiffs' decedents, Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson.

### III.    CAUSES OF ACTION

### (First Action – Product Liability)

1-16.    Plaintiffs, and each of them, incorporate paragraphs one through sixteen, above, by reference and as though fully set forth herein.

17.    The subject Tamarack Active Winglets system is a product under Idaho Code § 6-1402(3) because it is an object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts and produced for introduction into trade or commerce.

18.    Defendant, Cranfield Aerospace Solutions Limited, is a manufacturer under Idaho Code § 6-1402(2) as said Defendant designed, produced, made, fabricated, and/or constructed the subject Tamarack Active Winglets system.

19.    Plaintiffs, and each of them, are claimants under Idaho Code § 6-1402(4) as they are each a person or entity asserting a product liability claim, including a wrongful death action.

20.    On November 30, 2018 and at all times herein relevant, the subject Tamarack Active Winglets system was not reasonably safe as designed and not reasonably safe because

adequate warnings or instructions were not provided including in one or more of the following particular manners:

(a)    The load alleviation system failed to comply with the requirement that while the system is active or after any single failure that the controllability and maneuverability requirements of 14 C.F.R. Part 23, Subpart D are met within a practical operational flight envelope, contrary to and in violation of FAA Special Condition SC 23.672(d)(1);

(b)    The load alleviation system failed to comply with the requirement that while the system is active or after any single failure that the trim, stability, and stall characteristics are not impaired below a level needed to permit continued safe flight and landing, contrary to and in violation of FAA Special Condition SC 23.672(d)(2);

(c)    The load alleviation system failed to comply with the requirement that proper precautions be taken to prevent inadvertent or improper operation of the load alleviation system, contrary to and in violation of FAA Special Condition SC 23.677(a);

(d)    The load alleviation system failed to comply with the requirement that when any single connecting or transmitting element in the primary flight control system fails, adequate control for safe flight and landing is available, contrary to and in violation of FAA Special Condition SC 23.677.(b);

(e)    The load alleviation system failed to comply with the requirement that it be irreversible unless the control surface is adequately balanced and/or have no unsafe flutter characteristic, contrary to and in violation of SC 23.677(c);

(f)    The load alleviation system failed to comply with the requirement that it have adequate rigidity and reliability, contrary to and in violation of SC 23.677.(c);

(g)    The load alleviation system failed to comply with the requirement that the airplane be safely controllable and a pilot be able to perform all maneuvers and operations necessary to affect a safe landing following any load alleviation system runaway not shown to be extremely improbable, contrary to and in violation of FAA Special Condition SC 23.677(d);

(h)    The load alleviation system failed to comply with the requirement that during operation the flight control system and load alleviation system were free from jamming, excessive friction, and/or excessive deflection, contrary to and in violation of FAA Special Condition SC 23.683(a);

(i)     The load alleviation system failed to comply with the requirement that it not restrict or prevent aileron control surface movements or cause an adverse response of the ailerons, contrary to and in violation of Special Condition SC 23.683(b);

(j)     The load alleviation system failed to comply with the requirement that it be tested to and therefore capable of continuing safe flight with the limit loads prescribed by Special Condition SC 23.683(c) contrary to and in violation of Special Condition SC 23.683(c);

(k)     The load alleviation system failed to comply with the requirement that it be designed and installed to prevent jamming, chafing, and interference from cargo, passengers, loose objects or the freezing of moisture, contrary to and in violation of Special Condition SC 23.685(a);

(l)     The load alleviation system failed to comply with the requirement that it not be susceptible to entry of foreign objects into places where they would jam any one connecting or transmitting element contrary to and in violation of Special Condition SC 23.685(a);

(m)     The load alleviation system failed to comply with the requirement that it be distinctively and permanently marked, to minimize the possibility of incorrect assembly that could result in malfunction of the control system contrary to and in violation of Special Condition SC 23.685(c);

(n)     The load alleviation system failed to comply with the requirement that it be designed so that during normal operation, when the surface has been placed in any position, it will not move from that position unless the control is adjusted or moved by the operation of the system, contrary to and in violation of Special Condition SC 23.697(a);

(o)     The load alleviation system failed to comply with the requirement that the rate of movement of the control surface in response to the load alleviation system controls must give satisfactory flight and performance characteristics under steady and changing conditions of airspeed, engine power, attitude, flap configuration, speedbrake position, and during landing gear extension and retraction, contrary to and in violation of FAA Special Condition SC 23.697(b);

(p)     The load alleviation system failed to comply with the requirement that it be synchronized by a mechanical interconnection between the moveable surfaces or by an approved equivalent means, contrary to and in violation of Special Condition SC 23.701(a);

(q)     The design of the load alleviation system failed to comply with the requirement that the occurrence of any failure of the system that would result in an unsafe flight characteristic of the airplane is extremely

improbable, contrary to and in violation of FAA Special Condition SC 23.701(a)(2);

(r)    The load alleviation system failed to comply with the requirement that the airplane must be shown to have safe flight characteristics with any combination of extreme positions of individual movable surfaces, contrary to and in violation of FAA Special Condition SC 23.701(b);

(s)    The load alleviation system failed to comply with the requirement that it be designed to account for unsymmetrical loads resulting from flight with the engines on one side inoperative or at reduced power, contrary to and in violation of Special Condition SC 23.701(c);

(t)    The load alleviation system failed to comply with the requirement for the continuation of the flight of the airplane in the system failed state, contrary to and in violation of paragraph 2(f)(2) of FAA Special Conditions No. 23–279A–SC;

(u)    The load alleviation system failed to comply with the requirement that after any single failure of the load alleviation system, the airplane was safely controllable when the failure or malfunction occurred at any speed or altitude within the approved operating limitations critical for the type of failure considered, contrary to and in violation of FAA Special Condition SC 23.672(c);

(v)    The load alleviation system failed to comply with the requirement that it must permit counteraction of failures without requiring exceptional pilot skill or strength by either deactivation of the system or by overriding, contrary to and in violation of FAA Special Condition SC 23.672(b);

(w)    The load alleviation system failed to comply with the requirement that a warning, which is clearly distinguishable to the pilot under expected flight conditions without requiring the pilot's attention, must be provided for any failure in the load alleviation system that could result in an unsafe condition, contrary to and in violation of FAA Special Condition SC 23.672(a);

(x)    The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.675 requiring the control system to include a mechanism to positively limit the range of motion and that these mechanisms not adversely affect safety of flight contrary to and in violation of Special Condition 23.

(y)    The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.681in that the testing was not performed at the most severe loading and therefore the

structure is not constructed to withstand the most severe loading contrary to and in violation of Special Conditions

(z)     The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.693in that the certain joints subject to angular motion be designed to a specified factor of safety contrary to and in violation of Special Conditions;

(aa)    The load alleviation system failed to comply with the requirement that it be designed taking into consideration all conditions that could be encountered up to the point where the limit load is reached including but not limited to the effect of nonlinearities must be investigated beyond limit conditions to ensure the behavior of the system presents no anomaly compared to the behavior below limit conditions contrary to and in violation of Special Conditions 2(e)(1);

(bb)    load alleviation system failed to comply with the requirement that it be designed to meet the aeroelastic stability requirements of § 23.629 contrary to and in violation of Special Conditions 2(e)(3);

(cc)    The load alleviation system otherwise failed to meet the applicable provisions of the mandatory government regulations incorporated by reference in FAA Type Certificate No. A1W1 contrary to the Type Certification Basis requirement contained in FAA Special Conditions No. 23–279A–SC;

(dd)    The subject Tamarack Active Winglets system was not reasonably safe as designed because at the time of manufacture, the likelihood that the product would cause claimants harm or similar harms, and the seriousness of those harms, outweighed the burden on Defendant to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product;

(ee)    the subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions for the system were not provided because at the time of the manufacture, the likelihood that the product would cause the claimants harm or similar harms and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate;

(ff)    the subject Tamarack Active Winglets system was not reasonably safe and the subject system's warnings and instructions were not reasonably safe as its warnings and instructions were unsafe to an extent beyond that which would be contemplated by the ordinary consumer;

(gg)    the subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions were not provided after the Tamarack Active Winglets system was manufactured Defendant learned or should have learned about a danger connected with the product after it was manufactured. Defendant failed to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances; and/or

(hh)    the subject Tamarack Active Winglets system was not reasonably safe in construction for which Defendant is strictly liable because the product did not conform to the manufacturer's express warranty and did not conform to the implied warranties.

21.     On November 30, 2018 and as a direct and proximate result of one or more of the foregoing conditions of the subject Tamarack Active Winglets system that were not reasonably safe, the Subject Airplane was caused to and did deviate from controlled flight and crashed into trees and the ground in Clark County, Indiana, causing Plaintiff decedents, Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson, and each of them, to suffer fatal injuries.

22.     That at the time of their deaths, Plaintiff decedents, and each of them, left surviving certain heirs for benefit this action is being brought by the heirs and/or personal representatives of the decedents pursuant to Idaho Code § 5-311.

23.     That as a result of the deaths of Plaintiff decedents, their respective heirs, and each of them, have sustained damages including but not limited to the reasonable value of each decedent's services, training, comfort, and society, the loss of financial support from each of the decedents, and the reasonable costs of each decedent's funeral, and Plaintiff, Erica Davis, has further sustained the loss of conjugal relationship with her spouse.

24.     That Erica Davis is the duly appointed personal representative of the Estate of Andrew Dale Davis, deceased; Michael M. Maschmeyer is the duly appointed personal representative of the estate of R. Wayne Estopinal, deceased; and James Johnson and Bradley

Herman are the duly appointed Independent Co-Administrators of the Estate of Sandra Johnson, deceased.

WHEREFORE Plaintiffs, Erica Davis, individually and as Personal Representative of the Estate of Andrew Dale Davis, deceased, and minor children, JC, minor child, SD, minor child; Michael M. Maschmeyer, as Personal Representative of the Estate of R. Wayne Estopinal, deceased, and James Johnson and Bradley Herman, as Independent Co-Adminsitrators of the Estate of Sandra Johnson, deceased, and each of them, prays that judgment be entered in their favor and against Defendant, Cranfield Aerospace Solutions Limited, in a reasonable sum in excess of seventy-five thousand dollars ($75,000) together with prejudgment interest, attorneys' fees and costs of the action.

### (Second Action – Negligence)

1-16.    Plaintiffs, and each of them, incorporate paragraphs one through sixteen, above, by reference and as though fully set forth herein.

25.    That it then and there was and became the duty of Defendant, Cranfield Aerospace Solutions Limited, to use ordinary care, including care in the design, production, instructions, and warnings relating to the Tamarack Active Winglet system, for the safety of Plaintiff decedents, and each of them.

26.    Notwithstanding the aforesaid duty, Defendant, Cranfield Aerospace Solutions Limited, breached its duty of care to Plaintiff decedents, and each of them, in one or more of the following manners:

(a)    Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that while the system is active or after any single failure that the controllability and maneuverability requirements of 14 C.F.R. Part 23, Subpart D are met within a practical operational flight

envelope, contrary to and in violation of FAA Special Condition SC 23.672(d)(1);

(b)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that while the system is active or after any single failure that the trim, stability, and stall characteristics are not impaired below a level needed to permit continued safe flight and landing, contrary to and in violation of FAA Special Condition SC 23.672(d)(2);

(c)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that proper precautions be taken to prevent inadvertent or improper operation of the load alleviation system, contrary to and in violation of FAA Special Condition SC 23.677(a);

(d)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that when any single connecting or transmitting element in the primary flight control system fails, adequate control for safe flight and landing is available, contrary to and in violation of FAA Special Condition SC 23.677.(b);

(e)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be irreversible unless the control surface is adequately balanced and/or have no unsafe flutter characteristic, contrary to and in violation of SC 23.677(c);

(f)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it have adequate rigidity and reliability, contrary to and in violation of SC 23.677.(c);

(g)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system failed to comply with the requirement that the airplane be safely controllable and a pilot be able to perform all maneuvers and operations necessary to affect a safe landing following any load alleviation system runaway not shown to be extremely improbable, contrary to and in violation of FAA Special Condition SC 23.677(d);

(h)  Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that during operation the flight control system and load alleviation system were free from jamming, excessive

friction, and/or excessive deflection, contrary to and in violation of FAA Special Condition SC 23.683(a);

(i)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it not restrict or prevent aileron control surface movements or cause an adverse response of the ailerons, contrary to and in violation of Special Condition SC 23.683(b);

(j)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be tested to and therefore capable of continuing safe flight with the limit loads prescribed by Special Condition SC 23.683(c) contrary to and in violation of Special Condition SC 23.683(c);

(k)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed and installed to prevent jamming, chafing, and interference from cargo, passengers, loose objects or the freezing of moisture, contrary to and in violation of Special Condition SC 23.685(a);

(l)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it not be susceptible to entry of foreign objects into places where they would jam any one connecting or transmitting element contrary to and in violation of Special Condition SC 23.685(a);

(m)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be distinctively and permanently marked, to minimize the possibility of incorrect assembly that could result in malfunction of the control system contrary to and in violation of Special Condition SC 23.685(c);

(n)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed so that during normal operation, when the surface has been placed in any position, it will not move from that position unless the control is adjusted or moved by the operation of the system, contrary to and in violation of Special Condition SC 23.697(a);

(o)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that the rate of movement of the control surface in response to the load alleviation system controls must give satisfactory flight and performance characteristics under steady and changing conditions of airspeed, engine power, attitude, flap configuration, speedbrake position, and during landing gear extension and retraction, contrary to and in violation of FAA Special Condition SC 23.697(b);

(p)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be synchronized by a mechanical interconnection between the moveable surfaces or by an approved equivalent means, contrary to and in violation of Special Condition SC 23.701(a);

(q)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system with a design that failed to comply with the requirement that the occurrence of any failure of the system that would result in an unsafe flight characteristic of the airplane is extremely improbable, contrary to and in violation of FAA Special Condition SC 23.701(a)(2);

(r)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that the airplane must be shown to have safe flight characteristics with any combination of extreme positions of individual movable surfaces, contrary to and in violation of FAA Special Condition SC 23.701(b);

(s)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed to account for unsymmetrical loads resulting from flight with the engines on one side inoperative or at reduced power, contrary to and in violation of Special Condition SC 23.701(c);

(t)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement for the continuation of the flight of the airplane in the system failed state, contrary to and in violation of paragraph 2(f)(2) of FAA Special Conditions No. 23–279A–SC;

(u)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that after any single failure of the load

alleviation system, the airplane was safely controllable when the failure or malfunction occurred at any speed or altitude within the approved operating limitations critical for the type of failure considered, contrary to and in violation of FAA Special Condition SC 23.672(c);

(v)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it must permit counteraction of failures without requiring exceptional pilot skill or strength by either deactivation of the system or by overriding, contrary to and in violation of FAA Special Condition SC 23.672(b);

(w)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that a warning, which is clearly distinguishable to the pilot under expected flight conditions without requiring the pilot's attention, must be provided for any failure in the load alleviation system that could result in an unsafe condition, contrary to and in violation of FAA Special Condition SC 23.672(a);

(x)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.675 requiring the control system to include a mechanism to positively limit the range of motion and that these mechanisms not adversely affect safety of flight contrary to and in violation of Special Condition 23.

(y)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.681in that the testing was not performed at the most severe loading and therefore the structure is not constructed to withstand the most severe loading contrary to and in violation of Special Conditions

(z)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.693in that the certain joints subject to angular motion be designed to a specified factor of safety contrary to and in violation of Special Conditions;

(aa)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed taking into consideration

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

all conditions that could be encountered up to the point where the limit load is reached including but not limited to the effect of nonlinearities must be investigated beyond limit conditions to ensure the behavior of the system presents no anomaly compared to the behavior below limit conditions contrary to and in violation of Special Conditions 2(e)(1);

(bb)    Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed to meet the aeroelastic stability requirements of § 23.629 contrary to and in violation of Special Conditions 2(e)(3);

(cc)    Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that otherwise failed to meet the applicable provisions of the mandatory government regulations incorporated by reference in FAA Type Certificate No. A1W1 contrary to the Type Certification Basis requirement contained in FAA Special Conditions No. 23–279A–SC;

(dd)    Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe as designed because at the time of manufacture, the likelihood that the product would cause claimants harm or similar harms, and the seriousness of those harms, outweighed the burden on Defendant to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product;

(ee)    Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe because adequate warnings or instructions for the system were not provided because at the time of the manufacture, the likelihood that the product would cause the claimants harm or similar harms and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate;

(ff)    Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe and the subject system's warnings and instructions were not reasonably safe as its warnings and instructions were unsafe to an extent beyond that which would be contemplated by the ordinary consumer;

(gg)   Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe because adequate warnings or instructions were not provided after the Tamarack Active Winglets system was manufactured Defendant learned or should have learned about a danger connected with the product after it was manufactured. Defendant failed to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances; and/or

(hh)   Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe in construction and did not conform to the manufacturer's express warranty and did not conform to the implied warranties.

27.     That as On November 30, 2018 and as a direct and proximate result of one or more of the foregoing negligent breaches of duty by Defendant, Cranfield Aerospace Solutions Limited, the Subject Airplane was caused to and did deviate from controlled flight and crashed into trees and the ground in Clark County, Indiana, causing Plaintiff decedents, Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson, and each of them, to suffer fatal injuries.

28.     That at the time of their deaths, Plaintiff decedents, and each of them, left surviving certain heirs for benefit this action is being brought by the heirs and/or personal representatives of the decedents pursuant to Idaho Code § 5-311.

29.     That as a result of the deaths of Plaintiff decedents, their respective heirs, and each of them, have sustained damages including but not limited to the reasonable value of each decedent's services, training, comfort, and society, the loss of financial support from each of the decedents, and the reasonable costs of each decedent's funeral, and Plaintiff, Erica Davis, has further sustained the loss of conjugal relationship with her spouse.

30.     That Erica Davis is the duly appointed personal representative of the Estate of Andrew Dale Davis, deceased; Michael M. Maschmeyer is the duly appointed personal representative of the estate of R. Wayne Estopinal, deceased; and James Johnson and Bradley

COMPLAINT AND DEMAND FOR JURY TRIAL - 18

Herman are the duly appointed Independent Co-Administrators of the Estate of Sandra Johnson, deceased.

WHEREFORE Plaintiffs, Erica Davis, individually and as Personal Representative of the Estate of Andrew Dale Davis, deceased, and minor children, JC, minor child, SD, minor child; Michael M. Maschmeyer, as Personal Representative of the Estate of R. Wayne Estopinal, deceased, and James Johnson and Bradley Herman, as Independent Co-Adminsitrators of the Estate of Sandra Johnson, deceased, and each of them, prays that judgment be entered in their favor and against Defendant, Cranfield Aerospace Solutions Limited, in a reasonable sum in excess of seventy-five thousand dollars ($75,000) together with prejudgment interest, attorneys' fees and costs of the action.

**(Third Action – Willful and Reckless Misconduct)**

1-16.   Plaintiffs, and each of them, incorporate paragraphs one through sixteen, above, by reference and as though fully set forth herein.

31.   That it then and there was and became the duty of Defendant, Cranfield Aerospace Solutions Limited, to refrain from willful and reckless conduct so as not to cause injury to the persons of Plaintiff decedents, and each of them.

32.   Notwithstanding the aforesaid duty, Defendant, Cranfield Aerospace Solutions Limited, breached its duty of care to Plaintiff decedents, and each of them, in one or more of the following manners:

(a)   Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that while the system is active or after any single failure that the controllability and maneuverability requirements of 14 C.F.R. Part 23, Subpart D are met within a practical operational flight envelope, contrary to and in violation of FAA Special Condition SC 23.672(d)(1);

(b)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that while the system is active or after any single failure that the trim, stability, and stall characteristics are not impaired below a level needed to permit continued safe flight and landing, contrary to and in violation of FAA Special Condition SC 23.672(d)(2);

(c)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that proper precautions be taken to prevent inadvertent or improper operation of the load alleviation system, contrary to and in violation of FAA Special Condition SC 23.677(a);

(d)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that when any single connecting or transmitting element in the primary flight control system fails, adequate control for safe flight and landing is available, contrary to and in violation of FAA Special Condition SC 23.677.(b);

(e)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be irreversible unless the control surface is adequately balanced and/or have no unsafe flutter characteristic, contrary to and in violation of SC 23.677(c);

(f)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it have adequate rigidity and reliability, contrary to and in violation of SC 23.677.(c);

(g)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system failed to comply with the requirement that the airplane be safely controllable and a pilot be able to perform all maneuvers and operations necessary to affect a safe landing following any load alleviation system runaway not shown to be extremely improbable, contrary to and in violation of FAA Special Condition SC 23.677(d);

(h)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that during operation the flight control system and load alleviation system were free from jamming, excessive friction, and/or excessive deflection, contrary to and in violation of FAA Special Condition SC 23.683(a);

(i)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it not restrict or prevent aileron control surface movements or cause an adverse response of the ailerons, contrary to and in violation of Special Condition SC 23.683(b);

(j)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be tested to and therefore capable of continuing safe flight with the limit loads prescribed by Special Condition SC 23.683(c) contrary to and in violation of Special Condition SC 23.683(c);

(k)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed and installed to prevent jamming, chafing, and interference from cargo, passengers, loose objects or the freezing of moisture, contrary to and in violation of Special Condition SC 23.685(a);

(l)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it not be susceptible to entry of foreign objects into places where they would jam any one connecting or transmitting element contrary to and in violation of Special Condition SC 23.685(a);

(m)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be distinctively and permanently marked, to minimize the possibility of incorrect assembly that could result in malfunction of the control system contrary to and in violation of Special Condition SC 23.685(c);

(n)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed so that during normal operation, when the surface has been placed in any position, it will not move from that position unless the control is adjusted or moved by the operation of the system, contrary to and in violation of Special Condition SC 23.697(a);

(o)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that the rate of movement of the control surface in response to the load alleviation system controls must give

COMPLAINT AND DEMAND FOR JURY TRIAL - 21

satisfactory flight and performance characteristics under steady and changing conditions of airspeed, engine power, attitude, flap configuration, speedbrake position, and during landing gear extension and retraction, contrary to and in violation of FAA Special Condition SC 23.697(b);

(p)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be synchronized by a mechanical interconnection between the moveable surfaces or by an approved equivalent means, contrary to and in violation of Special Condition SC 23.701(a);

(q)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system with a design that failed to comply with the requirement that the occurrence of any failure of the system that would result in an unsafe flight characteristic of the airplane is extremely improbable, contrary to and in violation of FAA Special Condition SC 23.701(a)(2);

(r)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that the airplane must be shown to have safe flight characteristics with any combination of extreme positions of individual movable surfaces, contrary to and in violation of FAA Special Condition SC 23.701(b);

(s)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed to account for unsymmetrical loads resulting from flight with the engines on one side inoperative or at reduced power, contrary to and in violation of Special Condition SC 23.701(c);

(t)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement for the continuation of the flight of the airplane in the system failed state, contrary to and in violation of paragraph 2(f)(2) of FAA Special Conditions No. 23–279A–SC;

(u)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that after any single failure of the load alleviation system, the airplane was safely controllable when the failure or malfunction occurred at any speed or altitude within the approved operating limitations critical for the type of failure considered, contrary to and in violation of FAA Special Condition SC 23.672(c);

(v)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it must permit counteraction of failures without requiring exceptional pilot skill or strength by either deactivation of the system or by overriding, contrary to and in violation of FAA Special Condition SC 23.672(b);

(w)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that a warning, which is clearly distinguishable to the pilot under expected flight conditions without requiring the pilot's attention, must be provided for any failure in the load alleviation system that could result in an unsafe condition, contrary to and in violation of FAA Special Condition SC 23.672(a);

(x)     Negligently and carelessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.675 requiring the control system to include a mechanism to positively limit the range of motion and that these mechanisms not adversely affect safety of flight contrary to and in violation of Special Condition 23.

(y)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.681in that the testing was not performed at the most severe loading and therefore the structure is not constructed to withstand the most severe loading contrary to and in violation of Special Conditions

(z)     Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.693in that the certain joints subject to angular motion be designed to a specified factor of safety contrary to and in violation of Special Conditions;

(aa)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed taking into consideration all conditions that could be encountered up to the point where the limit load is reached including but not limited to the effect of nonlinearities must be investigated beyond limit conditions to ensure the behavior of the system

COMPLAINT AND DEMAND FOR JURY TRIAL - 23

presents no anomaly compared to the behavior below limit conditions contrary to and in violation of Special Conditions 2(e)(1);

(bb)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that failed to comply with the requirement that it be designed to meet the aeroelastic stability requirements of § 23.629 contrary to and in violation of Special Conditions 2(e)(3);

(cc)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce a load alleviation system that otherwise failed to meet the applicable provisions of the mandatory government regulations incorporated by reference in FAA Type Certificate No. A1W1 contrary to the Type Certification Basis requirement contained in FAA Special Conditions No. 23–279A–SC;

(dd)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe as designed because at the time of manufacture, the likelihood that the product would cause claimants harm or similar harms, and the seriousness of those harms, outweighed the burden on Defendant to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product;

(ee)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe because adequate warnings or instructions for the system were not provided because at the time of the manufacture, the likelihood that the product would cause the claimants harm or similar harms and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate;

(ff)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe and the subject system's warnings and instructions were not reasonably safe as its warnings and instructions were unsafe to an extent beyond that which would be contemplated by the ordinary consumer;

(gg)    Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe because adequate warnings or instructions were not provided after the Tamarack Active Winglets system

COMPLAINT AND DEMAND FOR JURY TRIAL - 24

was manufactured Defendant learned or should have learned about a danger connected with the product after it was manufactured. Defendant failed to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances; and/or

(hh)   Willfully and recklessly designed, provided instruction and warnings, and placed into the stream of commerce the subject Tamarack Active Winglets system when it was not reasonably safe in construction and did not conform to the manufacturer's express warranty and did not conform to the implied warranties.

33.     That as On November 30, 2018 and as a direct and proximate result of one or more of the foregoing willful and reckless conduct of the Defendant, Cranfield Aerospace Solutions Limited, the Subject Airplane was caused to and did deviate from controlled flight and crashed into trees and the ground in Clark County, Indiana, causing Plaintiff decedents, Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson, and each of them, to suffer fatal injuries.

34.     That at the time of their deaths, Plaintiff decedents, and each of them, left surviving certain heirs for benefit this action is being brought by the heirs and/or personal representatives of the decedents pursuant to Idaho Code § 5-311.

35.     That as a result of the deaths of Plaintiff decedents, their respective heirs, and each of them, have sustained damages including but not limited to the reasonable value of each decedent's services, training, comfort, and society, the loss of financial support from each of the decedents, and the reasonable costs of each decedent's funeral, and Plaintiff, Erica Davis, has further sustained the loss of conjugal relationship with her spouse.

36.     That Erica Davis is the duly appointed personal representative of the Estate of Andrew Dale Davis, deceased; Michael M. Maschmeyer is the duly appointed personal representative of the estate of R. Wayne Estopinal, deceased; and James Johnson and Bradley herman are the duly appointed Independent Co-Administrators of the Estate of Sandra Johnson, deceased.

WHEREFORE Plaintiffs, Erica Davis, individually and as Personal Representative of the Estate of Andrew Dale Davis, deceased, and minor children, JC, minor child, SD, minor child; Michael M. Maschmeyer, as Personal Representative of the Estate of R. Wayne Estopinal, deceased, and James Johnson and Bradley Herman, as Independent Co-Adminsitrators of the Estate of Sandra Johnson, deceased, and each of them, prays that judgment be entered in their favor and against Defendant, Cranfield Aerospace Solutions Limited, in a reasonable sum in excess of seventy-five thousand dollars ($75,000) together with prejudgment interest, attorneys' fees and costs of the action

<u>JURY DEMAND</u>

Plaintiffs, and each of them, hereby demand a trial by jury on his complaint in the above-entitled action.

Dated this <u>24th</u> day of November, 2020

<u>/s/ J. Charles Hepworth</u>
J. Charles Hepworth (ISB #2878)
HEPWORTH HOLZER, LLP
P.O. Box 2582
Boise, ID 83701
208-343-7510 (Telephone)
208-342-2927 (Facsimile)
chepworth@hepworthholzer.com

Additional Plaintiff Counsel:

<u>Attorneys for Davis Plaintiff</u>:
Joseph J. Slama
(*Pro Hac Vice Pending*)
KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK, PA
12 SE 7th Street, #801
Ft. Lauderdale, Florida 33301
(954) 763-8181 (Telephone)
(954) 763-8292 (Facsimile)
jslama@krupnicklaw.com

Attorneys for Maschmeyer Plaintiff:
Thomas P. Routh.
 (*Pro Hac Vice Pending*)
NOLAN LAW GROUP
20 North Clark Street, 30th Floor
Chicago, IL 60602
(312) 630-4000 (Telephone)
(312) 630-4011 (Facsimile)
tpr@nolan-law.com

Attorneys for Johnson Plaintiff:
Bruce A. Lampert
(*Pro Hac Vice Pending*)
KATZMAN LAMPERT & STOLL, PLLC
9596 Metro Airport Avenue
Broomfield, Colorado 80021
(303) 465-3663 (Telephone)
(303) 867-1565 (Facsimile)
blampert@klm-law.com